# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1892

_____

Bradley Timberland Resources

*Plaintiff - Appellant*

v.

Bradley Lumber Company; Webster Business Credit Corp.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Arkansas - El Dorado

_____

Submitted: March 14, 2013
Filed: April 8, 2013

_____

Before MURPHY, SMITH, and GRUENDER, Circuit Judges.

_____

MURPHY, Circuit Judge.

Webster Business Credit Corporation extended a loan to Bradley Lumber Company which was secured in part by the assets of its affiliate Bradley Timberland Resources. After Bradley Lumber defaulted on the loan, Bradley Timberland sued Webster and Bradley Lumber in state court for fraud and interference with business expectancy, claiming that both parties were liable for Webster's alleged misrepresentations related to the loan. The action was removed to federal court, and

Bradley Timberland moved to remand.  The district court[1] concluded that Bradley Timberland had fraudulently joined its affiliate Bradley Lumber as a defendant in order to defeat diversity jurisdiction, and it denied the motion to remand. After determining that Bradley Timberland's claims were time barred, the district court granted Webster's motion to dismiss.  Bradley Timberland appeals.  We affirm.

I.

David Chambers owns and operates companies engaged in various aspects of the lumber industry in southern Arkansas.  Chambers is the president and 90% owner of Bradley Lumber, which mills oak and pine lumber.  He is also the chairman and 70% owner of Bradley Timberland, which until recently owned approximately 25 square miles of Arkansas woodland from which Bradley Lumber's materials were harvested.

In October 2006 Chambers sought a revolving credit line from Webster, a New York bank, to finance Bradley Lumber's operations.  Webster agreed to establish a $6 million credit line for Bradley Lumber to be secured by assets including Bradley Timberland's woodlands.  During the fall of 2007 Webster became concerned about Bradley Lumber's liquidity.  Bradley Timberland alleges that Webster "demanded" that Bradley Lumber "recapitalize by selling off [Bradley Timberland's] assets and taking the money."  Bradley Timberland asserts that it complied with the request by selling its woodlands "at a loss from $700 to $800 per acre."

Webster did not renew the revolving loan after Bradley Timberland sold its woodlands. In August 2008 Webster instead wrote to Bradley Lumber that it had permanently discontinued any possibility of financing.  The next month Bradley

---

[1]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

Lumber ceased making payments on the loan, and in October Webster sued Bradley Lumber for default. After three years of litigation, the district court entered judgment in favor of Webster for approximately $2 million in December 2011.

In August 2011, while Webster's suit against Bradley Lumber was still ongoing, Bradley Timberland filed a complaint against Webster and Bradley Lumber in Arkansas state court. Bradley Timberland alleged that Webster had fraudulently induced it to sell its assets with a false promise that Webster would then renew Bradley Lumber's revolving credit line. Bradley Timberland also claimed that Webster had interfered with its business expectancy because otherwise it "could have stood to gain millions more through the continued development and sale of" its land. Bradley Timberland finally alleged a constructive fraud claim against Bradley Lumber for its "repeated mistakes" in relying on Webster's false promises.

Webster removed the action to federal district court in September, and the case was assigned to the same district court judge who was presiding over Webster's lawsuit for default. Webster moved to dismiss Bradley Timberland's complaint, arguing that its claims were barred by the applicable three year statute of limitations. Bradley Timberland moved to remand the action to state court, contending that remand was required because named defendant Bradley Lumber had not joined in the removal action. See 28 U.S.C. § 1446(b)(2)(A). Bradley Timberland also insisted that the "joinder of [Bradley Lumber] as a defendant was not fraudulent, but rather a legitimate and good faith claim against a separate defendant that asserts a viable claim under Arkansas law."

The district court denied Bradley Timberland's motion for remand, concluding that Bradley Lumber had been fraudulently joined to defeat diversity jurisdiction. It reasoned that "the relationship between [Bradley Timberland] and [Bradley Lumber] precludes even the possibility of constructive fraud" because the companies were "owned, financed, and operated" by the same person. The district court also granted

-3-

Webster's motion to dismiss after concluding that Bradley Timberland's claims were time barred. Bradley Timberland's own complaint alleged that the fraud had occurred when Webster "made several false representations" to Bradley Lumber in the fall of 2007. Since Bradley Timberland did not file suit until August 2011, the district court determined that the action was barred by the three year statute of limitations for tort claims under Arkansas law. Bradley Timberland filed a motion for reconsideration which was denied.

Bradley Timberland appeals, contending that the district court erred in denying its motion for remand to state court and in granting Webster's motion to dismiss. It also argues that the district court abused its discretion in denying its motion for reconsideration.

II.

Bradley Timberland first argues that the district court should have granted its motion to remand because removal to federal court was improper without Bradley Lumber's consent. While all defendants must typically join in a removal action, see 28 U.S.C. § 1446(b)(2)(A), the district court concluded that Bradley Lumber had been fraudulently joined to defeat diversity jurisdiction and that its consent to removal was therefore not required. We review whether Bradley Lumber was fraudulently joined de novo, resolving "all doubts about federal jurisdiction in favor of remand." Wilkinson v. Shackelford, 478 F.3d 957, 963 (8th Cir. 2007) (citation omitted) (quotation marks omitted). A party has been fraudulently joined if there is no "reasonable basis for predicting that the state law might impose liability based upon the facts involved." Id. (citation omitted) (quotation marks omitted).

Bradley Timberland brought a constructive fraud claim against Bradley Lumber, which the parties agree is governed by Arkansas law. Under Arkansas law, actual fraud requires "a false representation (usually of a material fact), knowledge

-4-

or belief by the defendant that the representation is false, intent to induce the plaintiff's reliance, justifiable reliance by the plaintiff, and resulting damage to the plaintiff." Yarborough v. DeVilbiss Air Power, Inc., 321 F.3d 728, 730 (8th Cir. 2003) (applying Arkansas law). Constructive fraud has the same elements except that it arises from a confidential relationship and does not require proof of scienter. Id.

As pleaded in its complaint, Bradley Timberland's constructive fraud claim alleges that

> Bradley Lumber, specifically their representatives, maintained a legal duty to Bradley Timberland. While they were not dishonest in their dealings with Bradley Timberland, their repeated mistakes in relying on the assertions made by Webster and subsequent role in bringing about the liquidation of Bradley Timberland assets is enough to constitute constructive fraud.

The district court concluded that Bradley Lumber had been fraudulently joined because there was no reasonable basis for imposing liability on Bradley Lumber for constructive fraud based on Bradley Timberland's pleadings. It therefore denied remand and dismissed the claim against Bradley Lumber.

We agree that Bradley Lumber was fraudulently joined in this case. Bradley Timberland's complaint fails to allege any false representation made by Bradley Lumber. The facts pleaded in the complaint only allege that Bradley Timberland "justifiably relied on the representations made by Webster" (emphasis added) and that Webster's misrepresentations "ultimately induced the actions of Bradley Lumber and Bradley Timberland" (emphasis added). Bradley Timberland also failed to plead facts demonstrating Bradley Lumber's intent to induce reliance on a misrepresentation or its own justified reliance. As the district court observed, intentional deceit was impossible because Bradley Lumber and Bradley Timberland "were owned, financed, and operated by the same person, Chambers." Bradley Timberland's contention that

Bradley Lumber faced a legitimate risk of liability for constructive fraud is also contradicted by the fact that Bradley Lumber did not appear before the district court or submit a brief on appeal. Since there is no "reasonable basis for predicting that the state law might impose liability based upon the facts involved," the district court did not err in concluding that Bradley Lumber was fraudulently joined to defeat diversity jurisdiction. See Wilkinson, 478 F.3d at 963.

There is also no merit to Bradley Timberland's argument that the district court improperly pierced the corporate veil by considering the ownership structures of Bradley Lumber and Bradley Timberland. A court pierces a corporate veil when it disregards a corporate entity to impose individual liability on its shareholders. See Anderson v. Stewart, 234 S.W.3d 295, 296 (Ark. 2006). The district court here did not disregard Bradley Lumber or Bradley Timberland's corporate form but rather considered their ownership structures in determining whether Bradley Lumber had been fraudulently joined.

Bradley Timberland next argues that the district court erred in granting Webster's motion to dismiss. We review the grant of a motion to dismiss de novo, taking the facts alleged in the complaint as true. Zutz v. Nelson, 601 F.3d 842, 848 (8th Cir. 2010). To survive a motion to dismiss, a complaint "need not include detailed factual allegations," C.N. v. Willmar Pub. Schs., Indep. Sch. Dist. No. 347, 591 F.3d 624, 629 (8th Cir. 2010), but it must contain "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The plausibility standard requires a plaintiff to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

A "motion to dismiss may be granted when a claim is barred under a statute of limitations." Varner v. Peterson Farms, 371 F.3d 1011, 1016 (8th Cir. 2004) (citation omitted) (quotation marks omitted). Under Arkansas law, the statute of limitations

-6-

for all tort actions "not otherwise limited by law" is three years. O'Mara v. Dykema, 942 S.W.2d 854, 858 (Ark. 1997). The limitations period begins to run when the wrong occurs, regardless of when it is discovered. Id.

The district court dismissed Bradley Timberland's claims against Webster after concluding that its own pleadings alleged that the claimed wrong had been committed in the fall of 2007 and that the action had therefore accrued approximately four years before suit was filed against Webster on August 12, 2011. The district court also took judicial notice of the facts presented in the previous lawsuit between Webster and Bradley Lumber, citing portions of that record which revealed that Bradley Timberland had known that Webster had discontinued financing the revolving loan during the fall of 2007. Bradley Timberland contends on appeal that its claim did not accrue until it received a letter from Webster's law firm on August 13, 2008 which indicated that the financing arrangement was being "permanently discontinu[ed]." Bradley Timberland claims that it thus filed its complaint one day before the statute of limitations ran.

We conclude that Bradley Timberland's claims are time barred. In support of its fraud claim, Bradley Timberland pled that "[s]tarting in the Fall (late August or early September) of 2007 Webster made several false representations." From "the face of the complaint itself" it is therefore apparent that Bradley Timberland's action against Webster accrued during the fall of 2007, see Varner, 371 F.3d at 1016, and hence the statute of limitations ran during the fall of 2010. Since Bradley Timberland did not file suit against Webster until August 2011, its claims against Webster are barred by Arkansas' three year statute of limitations for fraud and interference with business expectancy. See O'Mara, 942 S.W.2d at 858.

Bradley Timberland finally challenges the district court's denial of its motion for reconsideration, which we review for abuse of discretion. Elder-Keep v. Aksamit, 460 F.3d 979, 985–86 (8th Cir. 2006). A motion for reconsideration "serve[s] the

limited function of correcting manifest errors of law or fact or . . . present[ing] newly discovered evidence" after a final judgment. United States v. Metro. St. Louis Sewer Dist., 440 F.3d 930, 933 (8th Cir. 2006) (citation omitted) (quotation marks omitted). It cannot be used to introduce new evidence which could have been offered before judgment. Id.

In its motion for reconsideration, Bradley Timberland attempted once more to establish that Webster's false representations did not occur until the fall of 2008. It provided an affidavit from a Bradley Lumber finance manager, email correspondence between Bradley Lumber and Webster representatives, and bank records showing that Webster had continued to lend money to Bradley Lumber in 2008. Bradley Timberland argued that the court's "factual misunderstanding" about the timing of misrepresentations and default were evidence of disputed facts warranting trial.

Bradley Timberland's proffered evidence is irrelevant to this case. Its cause of action accrued when the alleged misrepresentations were made, see O'Mara, 942 S.W.2d at 858, which according to Bradley Timberland's complaint occurred in the fall of 2007. Evidence of a continuing loan arrangement has no bearing on the accrual of Bradley Timberland's fraud claims. Moreover, Bradley Timberland's new evidence was improperly presented as part of the motion for reconsideration because it could have been offered prior to the district court's judgment. See Metro. St. Louis Sewer Dist., 440 F.3d at 933. The district court did not abuse its discretion in denying the motion for reconsideration.

III.

We accordingly affirm the district court's denial of Bradley Timberland's motion for remand, its grant of Webster's motion to dismiss, and its denial of Bradley Timberland's motion for reconsideration.

_____